1 | DEBORAH S. REAMES, State Bar No. 117257
dreames@earthjustice.org
2 | GEORGE M. TORGUN, State Bar No. 222085
gtorgun@earthjustice.org
3 | Earthjustice
426 17th Street, 5th Floor
4 | Oakland, CA 94612
Telephone: (510) 550-6725      E-filing
5 | Facsimile: (510) 550-6749

6 | Attorneys for Plaintiffs

7 | BRENDAN R. CUMMINGS, State Bar. No. 193952
8 | P.O. Box 549
Joshua Tree, CA 92252
9 | Telephone: (760) 366-2232
Facsimile: (760) 366-2669

10 | Attorney for Plaintiffs Center for Biological Diversity
11 |

12 |
IN THE UNITED STATES DISTRICT COURT
13 | FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION
14 | C V   1 0   1 5 0 1

15 | CENTER FOR BIOLOGICAL DIVERSITY,      ) Case No:
SIERRA FOREST LEGACY, ENVIRONMENTAL)
16 | PROTECTION INFORMATION CENTER, and )
KLAMATH-SISKIYOU WILDLANDS CENTER, )
17 |
)      COMPLAINT FOR DECLARATORY
18 | Plaintiffs,      )      AND INJUNCTIVE RELIEF
)
19 |      v.      )
)
20 | KEN SALAZAR, in his official capacity as      )
Secretary of the Interior, ROWAN GOULD, in his )
21 | official capacity as Acting Director, United States )
Fish & Wildlife Service, and UNITED STATES )
22 | FISH & WILDLIFE SERVICE, an agency of the )
United States Department of the Interior,      )
23 | )
)
24 | Defendants.      )
_____)

25 |

26 |                              **INTRODUCTION**

27 | 1.      Nearly a decade ago, Plaintiffs Center for Biological Diversity, Sierra Forest Legacy,

28 | Environmental Protection Information Center, and Klamath-Siskiyou Wildlands Center (collectively,

COMPLAINT                                                                      1

1 "Plaintiffs"), along with several other organizations, petitioned the Secretary of Interior and the

2 Director of the U.S. Fish and Wildlife Service (collectively, the "Service") to list the west coast

3 population of the fisher ("fisher") as endangered under the Endangered Species Act ("ESA"), 16

4 U.S.C. § 1531 *et seq.,* and to designate for recovery and conservation its critical habitat pursuant to

5 that Act. To this day, the fisher has yet to receive the ESA protection that even the Service has now

6 deemed necessary to its continued existence.

7     2.     Only through the continued struggles of Plaintiffs and the intervention of this Court

8 did the Service finally, on July 10, 2003, announce its initial "90-day finding" that Plaintiffs' petition

9 to list the west coast population of the fisher contained substantial information indicating that listing

10 might be warranted. 68 Fed. Reg. 41169. *See Center for Biological Diversity v. Norton,* No. C 01-

11 2950 SC (N.D. Cal. Apr. 4, 2003). Ultimately, the Service issued its "12-month finding" concluding

12 what had been amply demonstrated by Plaintiffs' petition – *i.e.*, the fisher is headed towards

13 extinction and warrants listing under the ESA. 69 Fed. Reg. 18,770 (Apr. 8, 2004).

14     3.     Despite this finding, the Service announced it would not list the fisher. Instead, it

15 proclaimed that listing, though warranted, was precluded by "higher priority actions." *Id.*

16     4.     Nearly six years later, the fisher remains in bureaucratic limbo, one of hundreds of

17 "candidate" species whose listing status is repeated annually as "warranted but precluded."

18 Moreover, the rate at which candidate species are finally listed has become lower and lower over the

19 years. In the meantime, the fisher remains unprotected by the ESA.

20     5.     Fortunately for imperiled species like the fisher, the listing process is not so easily

21 sidestepped, at least as a matter of law. The ESA is clear that the Service may make a "warranted

22 but precluded" finding only if it demonstrates both that the timely promulgation of a regulation

23 listing the species is precluded by other pending listing proposals *and* that expeditious progress is

24 being made on those pending proposals. The Service made no such demonstration with respect to

25 the fisher at the time it made its "warranted but precluded" finding, and its record since establishes

26 not expeditious action but movement toward stagnation.

27     6.     Consequently, Plaintiffs now return to this Court and respectfully request that the

28 Court declare the Service's "warranted but precluded" finding for the fisher in violation of both the

COMPLAINT     2

1  ESA and the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.*, and order the Service to
2  withdraw that finding and publish forthwith a proposed rule listing the fisher as the endangered
3  species it is.

4  ### JURISDICTION AND VENUE

5  7.  This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal
6  question jurisdiction), 16 U.S.C. § 1540(c) (actions arising under the ESA), 16 U.S.C. § 1540(g)
7  (citizen suit provision of the ESA), and 5 U.S.C. § 701 *et seq.* (APA).

8  8.  Venue lies in this District pursuant to 28 U.S.C. § 1391(e) and 16 U.S.C.
9  § 1540(g)(3)(A) because a substantial part of the events or omissions giving rise to the claims
10  occurred here, because Plaintiffs Center for Biological Diversity and Environmental Protection
11  Information Center maintain an office responsible for issues related to the fisher and its habitat here,
12  and because many members of both plaintiff organizations reside in this District.

13  9.  As required by the ESA, 16 U.S.C. § 1540(g)(2)(C), Plaintiffs provided the Service
14  with written notice of the violations alleged herein more than sixty days before commencing this
15  action.  *See* February 4, 2010 letter to Ken Salazar, Secretary of the Interior, and Sam Hamilton,
16  Director, U.S. Fish & Wildlife Service, from David Noah Greenwald of the Center for Biological
17  Diversity.  A true and correct copy of this letter is attached hereto as Exhibit A.

18  ### INTRADISTRICT ASSIGNMENT

19  10.  Assignment to the San Francisco Division of this Court is proper because a
20  substantial part of the events or omissions giving rise to the claims in this case occurred in counties
21  covered by this division.  Civil Local Rule 3-2(c), (d).

22  ### PARTIES

23  11.  Plaintiff Center for Biological Diversity ("Center") is a non-profit 501(c)(3)
24  corporation with offices in San Francisco, Joshua Tree, and San Diego, California; Phoenix and
25  Tucson, Arizona; Pinos Altos, New Mexico; Portland, Oregon; and Washington, D.C.  The Center
26  has over 44,000 members throughout the United States and the world and works through science,
27  law, and policy to secure a future for all species hovering on the brink of extinction.  Since its
28  founding over twenty years ago, the Center has fulfilled this mission by preparing and publishing

COMPLAINT                                                                                          3

1  scientific articles, participating in state and federal administrative proceedings, disseminating
2  educational information through newsletters, alerts, the world-wide web and media releases, and
3  petitioning and litigating to list numerous species as threatened or endangered under both the federal
4  and the California ESA and to designate the critical habitat of such species under the federal ESA.
5  The Center is actively involved in species and habitat protection throughout the western United
6  States, including protection of the west coast population of the fisher.

7  12.  Plaintiff Sierra Forest Legacy ("Legacy") is a Sacramento-based coalition of over 80
8  local, regional and national environmental organizations dedicated to protecting and restoring the
9  Sierra Nevada's national forests. Formed in 1996, the Legacy works to protect and restore the
10  ancient forests, wildlands, wildlife and watersheds of the Sierra Nevada through scientific and legal
11  advocacy, public education and outreach, as well as grassroots forest protection efforts. Since the
12  late 1980s, the Legacy's founding members have been involved in major policy decisions and
13  research initiatives relating to Sierra Nevada national forest management and species conservation,
14  including efforts to study, protect, and recover the fisher. The Legacy has worked extensively within
15  the Sierra Nevada Adaptive Management process to advocate for scientific assessment of the
16  impacts of projects on and to obtain scientifically based protection for the fisher. It has also worked
17  with researchers in the Southern Sierra to develop better techniques for monitoring fisher and to
18  push for additional research.

19  13.  Plaintiff Environmental Protection Information Center ("EPIC") is a community
20  based, non-profit organization that actively works to protect and restore forests, watersheds, coastal
21  estuaries, and native species in northwest California. EPIC was established in 1977 when local
22  residents came together to successfully end aerial applications of herbicides by industrial logging
23  companies in Humboldt County. EPIC has been at the forefront of environmental protection in
24  northwest California since that time, working to ensure that state and federal agencies follow their
25  mandate to uphold environmental laws and protect endangered species. EPIC uses an integrated,
26  science-based approach that combines public education, citizen advocacy, and strategic litigation to
27  produce needed policy reforms. EPIC has a long history of working to protect and restore the forests
28  and native species in northwest California, including efforts to protect the fisher.

14.     Klamath-Siskiyou Wildlands Center ("KS Wild") is a non-profit organization incorporated in Oregon, with offices in Ashland and Williams, Oregon. KS Wild has 1,800 members in over 10 states, with most members concentrated in southern Oregon and northern California. KS Wild advocates for the protection and recovery of the forests, wildlife, and waters of the Rogue and Klamath Basins. Its goal is to protect and restore the extraordinary biological diversity of the Klamath-Siskiyou region of southwest Oregon and northwest California. KS Wild uses environmental law, science, education, and collaboration to defend healthy ecosystems and help build sustainable communities. KS Wild is engaged in many fisher conservation efforts, including remote camera work in 2009 to search for fisher on the Siskiyou Crest along the Oregon and California border and a 2010 tracking effort undertaken with staff from the Rogue River-Siskiyou National Forest to monitor radio-collared fisher.

15.     As further described *infra*, it is Plaintiffs who, through administrative petitioning and court action, caused the Service to determine that ESA listing of the fisher was "warranted but precluded" and seek through the instant action to obtain for the fisher the ESA protections it deserves.

16.     Plaintiffs and their members derive recreational, scientific, aesthetic, educational, moral, spiritual, and conservation benefit and enjoyment from the existence of the fisher. Plaintiffs believe that the species will continue to decline and will become extinct unless it is immediately listed as endangered and receives the full protections of the ESA.

17.     Plaintiffs' members live and/or work in communities in or near the habitat of the fisher. They use, on a continuing and ongoing basis, the habitat of the fisher for recreational, scientific, aesthetic, educational, moral, spiritual, and conservation purposes, including, but not limited to, nature study, wildlife observations, swimming, recreational fishing, hiking, backpacking, and aesthetic enjoyment. They intend to continue to do so on an ongoing basis in the future.

18.     Plaintiffs and their members believe that the health of the fisher is representative of the overall health of remaining old forest ecosystems on the west coast, and the alarming decline of this species signals the decline of many other species dependent upon these ecosystems as well. Extirpation of the fisher would constitute an enormous environmental loss in itself and would

1  indicate more generally that the health and diversity of the old forest ecosystems has declined

2  severely. Such events would deprive Plaintiffs and their members of the recreational, scientific,

3  aesthetic, educational, moral, spiritual, and conservation benefit they presently derive from the

4  native flora and fauna in these ecosystems.

5        19.     The above-described recreational, scientific, aesthetic, educational, moral, spiritual,

6  and conservation interests of Plaintiffs and their members have been, are being, and, unless the relief

7  prayed for herein is granted, will continue to be adversely affected and irreparably injured by the

8  Service's continuing failure to list the fisher.

9        20.     The injuries described above are actual, concrete injuries suffered by Plaintiffs and

10  their members. These injuries are caused by the Service's decision not to list the fisher as

11  endangered at this time. These injuries would be redressed by the relief sought herein. Plaintiffs

12  have no adequate remedy at law.

13        21.     Defendant Ken Salazar is sued in his official capacity as the Secretary of the Interior.

14  He is ultimately responsible for implementing the ESA, including making findings and

15  determinations in response to Plaintiffs' petition to list the fisher as endangered.

16        22.     Defendant Rowan Gould is sued in his official capacity as Acting Director of the U.S.

17  Fish and Wildlife Service. He is responsible for administering the ESA, including reviewing and

18  approving the findings and determinations in response to Plaintiffs' petition described above.

19        23.     Defendant United States Fish and Wildlife Service is an agency with the U.S.

20  Department of the Interior charged with implementing and ensuring compliance with the ESA.

21                               **STATUTORY BACKGROUND**

22        24.     Congress enacted the ESA "to provide a program for the conservation of . . .

23  endangered species and threatened species" and "to provide a means whereby the ecosystems upon

24  which endangered species and threatened species depend may be conserved." 16 U.S.C. § 1531(b).

25  A species is considered "endangered" if it is "in danger of extinction throughout all or a significant

26  portion of its range," or "threatened" if it is "likely to become an endangered species within the

27  foreseeable future." *Id*. at § 1532(6), (20).

28

1    25.    The ESA contains an array of strict procedural and substantive safeguards to prevent
2  activities that would jeopardize the continued existence of endangered and threatened species, result
3  in the destruction or adverse modification of their designated critical habitat, or harm individual
4  members of such species. *Id.* at §§ 1536, 1538. In addition, the statute requires the development
5  and implementation of plans that provide for the recovery of such species. *Id.* at § 1533(f).
6  However, none of these protections apply until a species is first formally listed as either endangered
7  or threatened.

8    26.    Section 4(b) of the ESA, 16 U.S.C. § 1533(b), sets forth a three-step listing process
9  that is triggered when the Service receives a listing petition such as that submitted by Plaintiffs in
10  this case. First, within 90 days of receiving the petition, the Service must make a preliminary
11  determination as to whether the petition presents substantial scientific or commercial information
12  indicating that listing the species may be warranted. *Id.* at § 1533(b)(3)(A). Second, if the Service
13  finds that the petition presents such information, it must then undertake a formal species status
14  review and determine, within 12 months of receiving the petition, whether listing the species as
15  endangered or threatened is warranted, not warranted, or warranted but precluded by higher priority
16  listing actions. *Id.* at § 1533(b)(3)(B). Third, if the Service determines that listing is warranted and
17  not precluded, the agency must promptly publish a proposed rule listing the species and then publish
18  a final rule listing the species one year later. *Id.* at § 1533(b)(6).

19    27.    Section 4(b)(3)(B)(iii) of the ESA allows the Service to make a "warranted but
20  precluded" finding only if:

21    (I) the immediate proposal and timely promulgation of a final regulation
      implementing the petitioned action . . . is precluded by pending proposals to
22    determine whether any species is an endangered species or a threatened species, *and*
      (II) expeditious progress is being made to add qualified species to either [the
23    endangered or the threatened species list] and to remove from such lists species for
      which the protections of this chapter are no longer necessary.
24

25  *Id.* at § 1533(b)(3)(B)(iii) (emphasis added). If the Service makes such a determination, it must
26  "promptly publish such finding in the Federal Register, together with a description and evaluation of
27  the reasons and data on which the finding is based." *Id.*
28

COMPLAINT                                                                                    7

1  28.  The ESA treats a listing petition that results in a "warranted but precluded" finding
2  under Section 4(b)(3)(B)(iii) as a petition that is resubmitted on the day that such finding is made
3  and one that presents substantial scientific or commercial information that listing may be warranted.
4  *Id.* at § 1533(b)(3)(C)(i). In other words, the petition is demoted to step two of the listing process
5  for another year, after which time the Service must decide again whether listing is warranted, not
6  warranted, or warranted but still precluded by higher priority listing actions. This occurs every year,
7  in the context of the Service's Candidate Notice of Review (or "CNOR") until the species is either
8  listed or its listing is determined to be no longer warranted. During this regulatory limbo, the species
9  is monitored but receives no substantive protection whatsoever under the ESA. *Id.* at
10  § 1533(b)(3)(C)(iii).

11  **THE WEST COAST DISTINCT POPULATION SEGMENT OF THE FISHER**

12  29.  The fisher (*Martes pennanti*) is a forest carnivore with a long, dark brown body, short
13  legs, and a long bushy tail. Adult fishers range in length from 29 to 47 inches, weigh between 3.3
14  and 13.2 pounds, and are estimated to live up to 10 years. Typically inhabiting old forest ecosystems
15  with high canopy closure, multiple canopy layers, large trees and snags, and large woody debris, the
16  fisher is an opportunistic predator with a diverse diet that includes porcupines, birds, small
17  mammals, reptiles, insects, deer carrion, vegetation, and fruit.

18  30.  On the west coast, the historic distribution of the fisher included all of western
19  Washington and Oregon, northwestern California, and the Sierra Nevada. In recent years, however,
20  the range and population of the fisher has been reduced dramatically due to trapping, predator and
21  pest control, car-related mortality, the loss of habitat caused by logging, farming, and fire, and the
22  loss of habitat connectivity due to fragmentation by roads and other activities.

23  31.  Survey information indicates that the fisher is likely extirpated from almost all of
24  Washington, most of Oregon, and at least half of its range in the Sierra Nevada. The remaining
25  California fisher are now divided into two remnant populations. The southern Sierra population is
26  believed to be at substantial risk of extinction due to several factors including isolation, small
27  population size, low reproductive capacity, and ongoing habitat loss. The northern California
28  population is isolated from the larger continental population and is threatened by habitat loss and

COMPLAINT                                                                              8

1  fragmentation. In Washington, there exists only a small reintroduced population in the Olympic

2  Mountains. In Oregon, fishers are restricted to two isolated populations, one in the Siskiyou

3  Mountains near the California border, and a reintroduced population in the Southern Cascade Range.

4  ## PROCEDURAL BACKGROUND

5  32.     On December 5, 2000, the Service received Plaintiffs' petition to list the west coast

6  population of the fisher as endangered under the ESA and to designate critical habitat for this

7  species. The petition extensively documents the fisher's dramatic population decline from its

8  historic distribution and identifies the likely causes of this decline, as detailed above. Nearly eight

9  months later, the Service had yet to make its "90-day finding" as to whether the petition presents

10  substantial information indicating that listing the fisher may be warranted. Accordingly, Petitioners

11  turned to this Court to compel the Service to do so, pursuant to its duties under 16 U.S.C.

12  § 1533(b)(3)(A). In 2003, in response to the Service's pleas that the listing process is costly and it

13  has a "heavy backlog" of such work, the Court recognized "the fact that 'timeliness in the listing

14  process is essential,'" and ordered the Service to make its "90-day finding" within 90 days of its

15  Order. *Center for Biological Diversity, et al. v. Norton, et al.*, No. C 01-2950 SC (N.D. Cal. Apr. 4,

16  2003) (Order Granting Plaintiffs' Motion for Summary Judgment) at 5-6, citing *Center for*

17  *Biological Diversity v. Norton,* 254 F.3d 833, 839 (9th Cir. 2001). Noting that, should the finding be

18  positive, the Service would "at that very instant be in violation of 16 U.S.C. § 1533(b)(3)(B),"

19  requiring a final finding within 12 months of its receipt of a listing petition, the Court retained

20  jurisdiction over the case to ensure the Service acted promptly under that circumstance. *Id.* At 7-8.

21  33.     On July 10, 2003, the Service published its "90-day finding" that the Plaintiffs'

22  petition presents substantial information indicating that listing the fisher under the ESA may be

23  warranted. 68 Fed. Reg. 41,169 (July 10, 2003).

24  34.     On April 8, 2004, the Service announced its "12-month finding" that listing the fisher

25  is warranted but precluded by other higher priority actions. 69 Fed. Reg. 18,770 (Apr. 8, 2004). The

26  Service characterized the overall magnitude of the threats to the fisher as "high" but the overall

27  immediacy of those threats "non-imminent." *Id.* at 18,792. On that basis, the Service assigned the

28  fisher a Listing Priority Number of 6. *Id.*

1    35.    On May 11, 2005, September 12, 2006, December 6, 2007, December 10, 2008, and
2 || November 9, 2009, the Service issued resubmitted petition findings as part of its annual Candidate
3 || Notice of Review for the fisher and hundreds of other species, which continued to find that listing
4 || the fisher was warranted but precluded by higher priority actions and to claim the Service has made
5 || and continues to make expeditious progress in listing candidate species. 70 Fed. Reg. 24,869 (May
6 || 11, 2005); 71 Fed. Reg. 53,756 (Sept. 12, 2006); 72 Fed. Reg. 69,033 (Dec. 6, 2007); 73 Fed. Reg.
7 || 75,176 (Dec. 10, 2008); 74 Fed. Reg. 57,804 (Nov. 9, 2009).

8    36.    In truth, the Service is not making expeditious progress in the listing of these species.
9 || The number and rate of such listings has quite decidedly declined over time. Under the Clinton
10 || administration, the Service listed 498 species, at a rate of 62.3 listings per year. Under the first Bush
11 || administration, the Service listed 225 species, or 56.3 per year. In contrast, during the eight-years of
12 || the most recent Bush administration, the Service listed only 51 species, at a rate of 6.4 listings per
13 || year. And in the 14-plus months of the Obama administration, the Service has listed two species.

14    37.    This striking decline in the progress of listing candidate species has occurred despite
15 || a equally striking increase in the Service's listing budget. From 2002 through 2009, the annual
16 || budget specifically earmarked for ESA listings has increased from $3,000,000 to $8,808,000.

17                          **FIRST CAUSE OF ACTION**

18                    (Violation of the Endangered Species Act –
                     Failure to Demonstrate Preclusion by Pending Proposals)
19
20    38.    Plaintiffs reallege, as if fully set forth herein, each and every allegation contained in
the preceding paragraphs.
21
22    39.    Section 4(b)(3)(B)(iii) of the ESA provides that the Service may make a "warranted
23 but precluded" finding only if it determines that "the immediate proposal and timely promulgation of
24 a final regulation implementing the petitioned action . . . is precluded by pending proposals to
25 determine whether any species is an endangered species or a threatened species." 16 U.S.C.
26 § 1533(b)(3)(B)(iii). If a "warranted but precluded" finding is made, the Service is required to
27 "promptly publish such finding in the Federal Register, together with a description and evaluation of
the reasons and data on which the finding is based." *Id*.
28

1  40.  In its "warranted but precluded" finding for the fisher, as well as in its subsequent

2  CNORs for this species, the Service failed to demonstrate that the immediate listing of the fisher is

3  precluded by pending listing proposals and did not provide a description and evaluation of the

4  reasons and data on which the finding was based, in violation of Section 4(b)(3)(B)(iii) of the ESA,

5  16 U.S.C. § 1533(b)(3)(B)(iii).

6  **SECOND CAUSE OF ACTION**

7  (Violation of the Endangered Species Act –
Failure to Demonstrate Expeditious Progress)

8

9  41.  Plaintiffs reallege, as if fully set forth herein, each and every allegation contained in

10  the preceding paragraphs.

11  42.  A "warranted but precluded" finding must also be supported by a determination that

12  "expeditious progress is being made to add qualified species to either [the endangered or the

13  threatened species list," and that determination must also be published in the Federal Register

14  "together with a description and evaluation of the reasons and data on which the finding is based."

15  16 U.S.C. § 1533(b)(3)(B)(iii).

16  43.  In its "warranted but precluded" finding for the fisher, as well as in its subsequent

17  CNORs, the Service failed to demonstrate that expeditious progress is being made to add other

18  qualified species to the list of endangered or threatened species and did not provide a description and

19  evaluation of the reasons on which the finding was based, in violation of Section 4(b)(3)(B)(iii) of

20  the ESA, 16 U.S.C. § 1533(b)(3)(B)(iii).

21  **THIRD CAUSE OF ACTION**

22  (Violation of the Administrative Procedure Act)

23  44.  Plaintiffs reallege, as if fully set forth herein, each and every allegation contained in

24  the preceding paragraphs.

25  45.  The Service's "warranted but precluded" finding for the fisher, as well as the findings

26  contained in its subsequent CNORs, are final agency actions subject to judicial review under the

27  APA.

28  46.  The Service's determinations that the listing of the fisher was and, six years later,

continues to be currently precluded by other pending listing actions, and its determinations that the

COMPLAINT  11

1 | Service has for the last six years been making expeditious progress in listing other imperiled species
2 | is arbitrary, capricious, an abuse of discretion, otherwise not in accordance with the law, in excess of
3 | statutory authority, and without observance of procedure required by law, in violation of the APA,
4 | 5 U.S.C. § 706(2).

5 | **REQUEST FOR RELIEF**

6 | WHEREFORE, Plaintiffs respectfully request that the Court:

7 | A. Find and declare that the Service's "warranted but precluded" finding for the west
8 | coast distinct population segment of the fisher violates the ESA and APA;

9 | B. Order the Service to withdraw its "warranted but precluded" finding for the fisher and
10 | publish forthwith a proposed rule listing the fisher as endangered and designating its critical habitat;

11 | C. Retain jurisdiction over this matter until such time as the Service has published a final
12 | rule listing the fisher as endangered and designating critical habitat;

13 | D. Award Plaintiffs their costs of litigation, including reasonable attorney and expert
14 | witness fees; and

15 | E. Grant Plaintiffs such further and additional relief as the Court may deem just and
16 | proper.

17 |
18 |
19 | DATED: April **8**, 2010                                      Respectfully submitted,
20 |
21 |
22 |                                                               DEBORAH S. REAMES
                                                                GEORGE M. TORGUN
23 |
24 |                                                               Attorneys for Plaintiffs
25 |
26 |
27 |
28 |

COMPLAINT                                                                                    12

February 4, 2010

***Certified Mail – Return Receipt Requested***

Ken Salazar
Secretary of the Interior
Department of the Interior
1849 "C" Street, N.W.
Washington, D.C. 20240

Sam Hamilton, Director
U.S. Fish & Wildlife Service
1849 "C" Street, NW, M/S 3012
Washington, D.C. 20240

> **Re:** **Notice of Violations of the Endangered Species Act for illegally designating the West Coast Distinct Population Segment of the Fisher to be warranted but precluded for listing as a threatened or endangered species despite the lack of expeditious progress in listing of threatened and endangered species**

Dear Secretary Salazar and Director Hamilton:

On behalf of the Center for Biological Diversity, Sierra Forest Legacy, Environmental Protection Information Center, and Klamath-Siskiyou Wildlands Center, we hereby notify you of violations of Section 4 of the Endangered Species Act ("ESA"), 16 U.S.C. § 1533, by the United States Fish and Wildlife Service ("Service") in determining that listing the west coast distinct population segment of the fisher is warranted but precluded by higher priority species' listing because you are failing to make expeditious progress in listing these higher priority species. This letter is provided pursuant to the 60-day notice requirement of the citizen suit provision of the ESA, 16 U.S.C. § 1540(g). The reasons for this notice are set out in greater detail below.

**Background**

A close relative of the mink, otter and marten, the fisher (*Martes pennanti*) has a long slender body with short legs, a triangular head with a sharp muzzle and large, rounded ears, and dark brown fur. Fishers have a diverse diet, including porcupines, birds, small mammals, insects, deer carrion, vegetation and fruit. Because they are the sole predator of porcupines, which eat trees, fishers have been reintroduced in many parts of the country by timber companies interested in controlling porcupine populations.

On the west coast, the fisher is reduced to two native populations – one in northern California and extreme southwestern Oregon and another in the southern Sierra Nevada – and a reintroduced population in the southern Oregon Cascades. The fisher's historic distribution on the west coast included all of western Washington and Oregon, northwestern California and the Sierra Nevada.

Ken Salazar
Sam Hamilton
February 4, 2010
Page 2

The fisher has been eliminated from all of Washington, most of Oregon, and declined to roughly 50% of its historical range in California. Survey information indicates the fisher is likely extirpated in the central and northern Sierra Nevada, dividing the two remaining native populations. The southern Sierra Nevada population is believed to be at substantial risk of extinction due to several factors including isolation, small population size (almost certainly fewer than 500 individuals), low reproductive capacity and ongoing habitat loss. The northern California population is isolated from the larger continental population, and is threatened by habitat loss and fragmentation.

On December 5, 2000, the Service received a petition from the Center for Biological Diversity and other organizations to list the west coast population of the fisher as endangered under the ESA and to designate its critical habitat. On July 31, 2001, the Center and others filed suit in the United States District Court for the Northern District of California challenging the Service's failure to make a timely initial finding as to whether the petition contained substantial information indicating that listing might be warranted, as required by 16 U.S.C. § 1533(b)(3)(A).

On April 4, 2003, that court found the Service to be in violation of the law and ordered the Service to make its initial finding for the fisher within 90 days. *Center for Biological Diversity v. Norton*, No. C 01-2106 SC (N.D. Cal., April 4, 2003). On July 10, 2003, the Service announced that the petition to list the west coast population of the fisher contained substantial information indicating that listing might be warranted. 68 Fed. Reg. 41169.

On April 3, 2004, the Service followed its positive initial finding with a determination that listing the west coast population of the fisher is "warranted, but precluded by higher priority listing actions." This "12-month" finding was published in the Federal Register on April 8, 2004. 69 Fed. Reg. 18770.

On August 3, 2004, the Center for Biological Diversity and other organizations notified you that your warranted but precluded determination failed to demonstrate that listing of the fisher was either precluded or that the agency was making expeditious progress in listing of higher priority species. Your continued failure to make expeditious progress has only become more apparent in the intervening years.

On May 11, 2005, September 12, 2006, December 6, 2007, December 10, 2008, and November 9, 2009, the Service has issued resubmitted petition findings for the fisher that have continued to determine the fisher to be warranted but precluded as part of their annual "Candidate Notice of Review" ("CNOR"), which include findings identical to that for the fisher for hundreds of species. 70 Fed. Reg. 24869, 71 Fed. Reg. 53756, 72 Fed. Reg. 69033, 73 Fed. Reg. 75176, 74 Fed. Reg. 57804.

Ken Salazar
Sam Hamilton
February 4, 2010
Page 3

**Violations of Section 4(b)(3)(B)**

Section 4(b)(3)(B) of the ESA provides:

> Within 12 months after receiving a petition that is found . . . to
> present substantial information indicating that the petitioned action
> may be warranted, the Secretary shall make one of the following
> findings:
>
> (i) The petitioned action is not warranted . . . .
>
> (ii) The petitioned action is warranted . . . .
>
> (iii) The petitioned action is warranted, but that –
>   (I) the immediate proposal and timely promulgation of
>   a final regulation implementing the petitioned action
>   . . . is precluded by pending proposals to determine
>   whether any species is an endangered species or a
>   threatened species, and
>
>   (II) expeditious progress is being made to add qualified
>   species to either [the endangered species list or the
>   threatened species list] and to remove from such lists
>   species for which the protections of this chapter are no
>   longer necessary.

If the third such finding is made with respect to a petition then the Service must revisit
that finding each year, and make a fresh determination whether proceeding with a proposed
listing may be deferred based on the pertinent statutory criteria. Id. at § 1533(b)(3)(C)(i); see
also 74 Fed. Reg. 57812 ("Section 4(b)(3)(C) of the Act requires that when we make a warranted
but precluded finding on a petition, we are to treat such a petition as one that is resubmitted on
the date of such a finding. Thus, we are required to publish new 12-month findings on these
'resubmitted' petitions on an annual basis."). In short, in order to make a WBP determination for
any petitioned species, either as an initial matter or in subsequent years, the Service must
establish that it is making "expeditious progress" in actually "add[ing]" species to the lists of
endangered and threatened species.

As the Ninth Circuit stated, "[t]he circumstances under which the Secretary may invoke
[the warranted but precluded] excuse, however, are narrowly defined; Congress emphasized that
providing for the 'warranted but precluded' designation was not designed to justify 'the foot-
dragging efforts of a delinquent agency.'" *Center for Biological Diversity v. Norton*, 254 F.3d
833, 838 (9th Cir. 2001) (citing to the ESA's legislative history). "Specifically," the court went

Ken Salazar
Sam Hamilton
February 4, 2010
Page 4

on, "the Secretary must show that she is 'actively working on other listings and delistings and must determine and publish a finding that such other work has resulted in pending proposals which actually precluded [her] proposing the petitioned action at that time.' . . . For that reason, '*the Secretary must determine and present evidence that she is, in fact, making expeditious progress in the process of listing and delisting other species.*'" *Id.* (citing legislative history) (emphasis added).

In originally determining listing of the fisher was warranted but precluded and in every subsequent determination that listing of the fisher continues to be warranted but precluded, the Service has utterly failed to demonstrate that expeditious progress is being made in adding qualified species to the list. Indeed, rather than demonstrating that the Service is making expeditious progress in adding species to the endangered and threatened lists, the five CNORs containing resubmitted findings for the fisher convincingly demonstrate precisely the opposite, i.e., that FWS is making virtually no progress at all in adding admittedly qualified species to the lists.

The Most recent CNOR issued on November 9, 2009 notes listing of only one species, a Hawaiian plant called *Phyllostegia hispida*, since the previous notice was published on December 10, 2008. 74 Fed. Reg. 57816. Likewise, CNORs for 2005, 2006, 2007 and 2008 identify listing of eight, six, zero and one species, respectively. Thus, during the more than five years following the fisher first being declared warranted but precluded, the Service only listed a total of sixteen species for a rate of roughly three species per year. By comparison, during the eight years of the Clinton administration, the Service listed an average of 65 species per year or a total of 522 species.

At the present rate of listing, it is unlikely that the fisher will receive protection any time soon. Currently, there are 249 candidate species, of which more than half are priority two or three according to the Service's priority ranking system, compared to the fisher's ranking of six. This means that all of these species will have to be listed first, which at a rate of three species per year could take literally decades. The fisher has already lost substantial range and the Service considers the magnitude of threats to the fisher to be "high." 74 Fed. Reg. 57821. Clearly, delay of protection of the fisher by decades is not what Congress envisioned in requiring the Service to make expeditious progress.

Failure to make expeditious progress render the Service's 12-month finding for the fisher and subsequent resubmitted findings arbitrary, capricious and an abuse of discretion, in violation of the ESA and the Administrative Procedure Act ("APA"), 5 U.S.C. § 706.

**Conclusion**

The Service's continued reluctance to take the action that the dire plight of the fisher demands – listing as an endangered species – has once again caused the Service to violate the

Ken Salazar
Sam Hamilton
February 4, 2010
Page 5

ESA. If the Service does not remedy these violations, we intend to commence an appropriate
action in United States District Court.

If you believe any of the foregoing to be in error, have any questions, or wish to discuss
this matter, please do not hesitate to call us.

Sincerely,

D. Noah Greenwald
Endangered Species Program Director
Center for Biological Diversity
PO Box 11374
Portland, OR 97211
ngreenwald@biologicaldiversity.org