UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY ET. AL.,<br><br>　　　　Plaintiff(s),<br><br>　v.<br><br>KEN SALAZAR, ET. AL,<br><br>　　　　Defendant(s). | Case No.  C 10-1501 JCS<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS**<br><br>**[Docket No. 60]** |

## I.     INTRODUCTION

Plaintiffs bring this action challenging the findings made by the United States Fish and Wildlife Service ("the Service") in 2004, 2005, 2006, 2007, 2008 and 2009 under the Endangered Species Act ("ESA"), 16 U.S.C. §1533(b)(3)(iii), that the listing of the west coast population of the Fisher as an endangered species is "warranted but precluded" by other pending ESA listing proposals. *See* Complaint for Declaratory and Injunctive Relief (Docket No. 1) ("Complaint"), at ¶¶ 38-46.  The Plaintiffs also challenge whether expeditious progress is being made on those pending proposals in violation of the ESA.  *Id.*  The Federal Defendants have filed a motion for partial dismissal under Rule 12(b)(1) on the ground that some of the claims in the Plaintiff's Complaint are moot and that this Court therefore lacks subject matter jurisdiction over them.  A hearing was held on October 1, 2010.  Having considered the papers filed and the arguments of counsel at the hearing, the Court DENIES the Defendants' motion to dismiss.

## II.    BACKGROUND

### A.    Factual Background

The fisher (Martes pennanti) is a forest carnivore with a long, dark brown body, short legs, and a long bushy tail.  Complaint, ¶ 29.  Adult fishers range in length from 29 to 47 inches, weigh

between 3.3 and 13.2 pounds, and are estimated to live up to 10 years. *Id.* Typically inhabiting old forest ecosystems with high canopy closure, multiple canopy layers, large trees and snags, and large woody debris, the fisher is an opportunistic predator with a diverse diet that includes porcupines, birds, small mammals, reptiles, insects, deer carrion, vegetation, and fruit. *Id.* On the west coast, the historic distribution of the fisher included all of western Washington and Oregon, northwestern California, and the Sierra Nevada. *Id.* at 30. In recent years, however, the range and population of the fisher has been reduced dramatically due to trapping, predator and pest control, the loss of habitat caused by logging, farming, and fire, and the loss of habitat connectivity due to fragmentation by roads and other activities. *Id.* Survey information indicates that the fisher is likely extirpated from almost all of Washington, most of Oregon, and at least half of its range in the Sierra Nevada. *Id*. at 31. The remaining California fisher are now divided into two remnant populations in the southern Sierra Nevada and northern California. *Id.*

### B. Procedural History

#### 1. The "Warranted but Precluded Finding" for the Fisher

On December 5, 2000, the Service received Plaintiffs' petition to list the fisher as endangered under the ESA and to designate critical habitat for this species. Complaint, ¶ 32. After several months passed and the Service had not issued a "90-day finding," Plaintiffs filed suit in district court to compel the Service to do so pursuant to its duties under 16 U.S.C. § 1533(b)(3)(A). *Id*. In response, the Service argued that 16 U.S.C. § 1533(b)(3)(A) required it to produce the fisher finding within 90 days to the "maximum extent practicable," and that due to a congressionally-imposed budgetary cap that only allowed it to work on listing activities governed by court orders, it was not practicable to do so. On March 5, 2002, the District Court granted the Service's motion for summary judgment, finding that the Service did not have a statutory duty to act on Plaintiffs' petition because it had not been practicable to do so within the meaning of 16 U.S.C. § 1533(b)(3)(A). *Id.*

Shortly thereafter, however, in another case with analogous facts, the Ninth Circuit issued its decision in *Biodiversity Legal Foundation v. Badgley*, 309 F.3d 1166 (9th Cir. 2002). In *Badgley*, the Ninth Circuit found that the Service has a duty to make the required 90-day finding on an ESA listing petition no later than 12 months after the petition is received, regardless of whether it has

1  been practicable for the Service to do so. 309 F.3d at 1175. In light of *Badgley*, Plaintiffs moved for
2  reconsideration of the District Court's summary judgment decision relating to the fisher, and on
3  April 4, 2003, this Court ordered the Service to make its "90-day finding" within 90 days of its
4  Order. *Center for Biological Diversity, et al. v. Norton, et al.*, No. C 01-2950 SC (N.D. Cal. Apr. 4,
5  2003) (Order Granting Plaintiffs' Motion for Summary Judgment). On July 10, 2003, the Service
6  published its "90-day finding" that the Plaintiffs' petition presented substantial information
7  indicating that listing the fisher under the ESA may be warranted. Compl. ¶ 33 (citing 68 Fed. Reg.
8  41,169 (July 10, 2003)).

9  On April 8, 2004, the Service announced its "12-month finding" that listing the fisher was
10  warranted but precluded by other higher priority actions. Compl. ¶ 34 (citing 69 Fed. Reg. 18,770
11  (Apr. 8, 2004) ("2004 Fisher Finding")).[1] The Service characterized the overall magnitude of the
12  threats to the fisher as "high" but the overall immediacy of those threats as "non-imminent." *Id.* at
13  18,792. As a result, the Service assigned the fisher a Listing Priority Number of 6 (the Service ranks
14  the priority of species on a scale of 1-12 based on the magnitude and imminence of threats to the
15  species and the taxonomic distinctiveness of the entity that is proposed for listing, with 1 being the
16  highest priority for listing and 12 the lowest). *Id.*

17  On May 11, 2005, September 12, 2006, December 6, 2007, December 10, 2008, and
18  November 9, 2009, the Service issued resubmitted petition findings as part of its annual Candidate
19  Notice of Review for the fisher and hundreds of other species, which continued to find that listing
20  the fisher was warranted but precluded by higher priority actions and that the Service has made and
21  continues to make expeditious progress in listing candidate species. Compl. ¶ 35 (citing 70 Fed.
22  Reg. 24,869 (May 11, 2005); 71 Fed. Reg. 53,756 (Sept. 12, 2006); 72 Fed. Reg. 69,033 (Dec. 6,
23  2007); 73 Fed. Reg. 75,176 (Dec. 10, 2008); 74 Fed. Reg. 57,804 (Nov. 9, 2009)).

24  On April 8, 2010, Plaintiffs filed the Complaint in the present action.

---

[1] In its Motion, the Service provides several justifications for its warranted but precluded findings for the fisher, including both the 2004 Fisher Finding and the subsequent CNORs. *See, e.g.*, Motion at 6 (discussing 2009 CNOR), 10 (2004 Fisher Finding), 11 (2005-2009 CNORs). Plaintiffs state that "these issues will be the focus of Plaintiffs' motion for summary judgment in this case are not addressed here." Pl.'s Opp. at 4, n.1.

### 2. Plaintiffs' Complaint

In their Complaint, Plaintiffs identify three causes of action regarding the Service's warranted but precluded findings for the fisher. In the first cause of action for violation of the ESA, "Failure to Demonstrate Preclusion by Pending Proposals," Plaintiffs claim that in the 2004 Fisher Finding, as well as in its subsequent CNORs, the Service failed to demonstrate that the immediate listing of the fisher is precluded by pending listing proposals and did not provide a description and evaluation of the reasons and data on which the finding was based, in violation of Section 4(b)(3)(B)(iii) of the ESA, 16 U.S.C. § 1533(b)(3)(B)(iii). Complaint, ¶¶ 38-40. In the second cause of action for violation of the ESA, "Failure to Demonstrate Expeditious Progress," Plaintiffs claim that in the 2004 Fisher Finding, as well as in its subsequent CNORs, the Service failed to demonstrate that expeditious progress is being made to add other qualified species to the list of endangered or threatened species and did not provide a description and evaluation of the reasons on which the finding was based, in violation of Section 4(b)(3)(B)(iii) of the ESA, 16 U.S.C. § 1533(b)(3)(B)(iii). *Id.* at ¶¶ 41-43. In the third cause of action for violation of the Administrative Procedures Act, Plaintiffs claim that the Service's determinations that the listing of the fisher was and continues to be currently precluded by other pending listing actions, and its determinations that the Service has been making expeditious progress in listing other imperiled species are arbitrary, capricious, an abuse of discretion, otherwise not in accordance with the law, in excess of statutory authority, and without observance of procedure required by law, in violation of the APA, 5 U.S.C. § 706(2). *Id.* at ¶¶ 44-46.

In its Request for Relief, Plaintiffs ask that the Court: (1) find and declare that the Service's warranted but precluded finding for the west coast distinct population segment of the fisher violates the ESA and APA; (2) order the Service to withdraw its "warranted but precluded" finding for the fisher and publish a proposed rule listing the fisher as endangered and designating its critical habitat; (3) retain jurisdiction over this matter until such time as the Service has published a final rule listing the fisher as endangered and designating critical habitat; (4) award Plaintiffs their costs of litigation, including reasonable attorney and expert witness fees; and (5) grant Plaintiffs such further and additional relief as the Court may deem just and proper. *Id.* at 12 (Request for Relief).

4

## III. ANALYSIS

### A. Rule 12(b)(1) Legal Standard

Federal Courts are courts of limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994). Their authority extends only to subject matter authorized by the Constitution or by statute. *Id.* The burden of establishing subject-matter jurisdiction is on the party asserting jurisdiction. *See id.* A motion under Rule 12(b)(1) of the Federal Rules of Civil Procedure will be granted if the complaint fails to allege grounds for federal subject-matter jurisdiction, as required by rule 8(a) of the Federal Rules of Civil Procedure. *See Warren v. Fox Family Worldwide*, 328 F.3d 1136, 1139 (9th Cir. 2003). However, "jurisdictional dismissals in cases premised on federal-question jurisdiction are exceptional" and are permitted only when the claim is "patently without merit." *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987).

A motion to dismiss under Rule 12(b)(1) can be facial or factual. *Safe Air For Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir.2003). A facial challenge asserts that the complaint, on its face, fails to allege facts that would invoke federal jurisdiction. *Id.* A factual attack disputes the veracity of allegations in the complaint that would, if true, invoke federal jurisdiction. *Id.* In a factual challenge, the court may consider evidence outside the pleadings to determine whether it has subject-matter jurisdiction. *Autery v. United States*, 424 F.3d 944, 956 (9th Cir. 2005).

Additionally, where a factual challenge is asserted, in contrast to a facial challenge, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." Roberts, 812 F.2d at 1177 (quoting *Augustine v. United States,* 704 F.2d 1074, 1077 (9th Cir. 1983)) (internal quotations omitted).

However, when the jurisdictional question is intertwined with the merits of the case, the matter is treated nearly like a Rule 12(b) (6) motion. A jurisdictional determination is intertwined with the merits of a case when a statute provides the basis for both subject-matter jurisdiction and the plaintiff's substantive claim for relief. *Safe Air For Everyone*, 373 F.3d at 1039-40. Where the question of jurisdiction is intertwined with the merits, as it is here, the court conducts an inquiry that is "analogous to a 12(b)(6) motion." *Roberts*, 812 F.2d at 1177-78. Accordingly, a court must

consider the allegations in the complaint as true, unless controverted by undisputed facts in the record, and must draw all reasonable inferences in favor of the plaintiff. *Roberts*, 812 F.2d at 1177.

### B.     Endangered Species Act

#### 1.     Listing of Species as Threatened or Endangered

In 1973, Congress enacted the ESA "to provide a means whereby the ecosystems upon which endangered species and threatened species depend may be conserved, [and] to provide a program for the conservation of such endangered species and threatened species." 16 U.S.C. § 1531(b).  Section 4 of the ESA directs the Secretary to determine whether the species is threatened or endangered because of any of the following five factors:

(A) the present or threatened destruction, modification, or curtailment of its habitat or range;

(B) overutilization for commercial, recreational, scientific, or educational purposes;

(C) disease or predation;

(D) the inadequacy of existing regulatory mechanisms; or

(E) other natural or manmade factors affecting its continued existence.

16 U.S.C. § 1533(a)(1); *see also* 50 C.F.R. §§ 424.10, 424.11(c).  An "endangered species" is defined as "any species which is in danger of extinction throughout all or a significant portion of its range," while a "threatened species" is "any species which is likely to become an endangered species within the foreseeable future throughout all or a significant portion of its range." 16 U.S.C. §§ 1532(6), (20).  A listed species gains various protections under the ESA to prevent harm to the species and aid its recovery.[2]  Congress has urged the Service to "utilize a scientifically based priority system to list and delist species, subspecies and populations based on the degree of threat,

---

[2]Among other things, species listed as endangered under the ESA receive protection from "taking," which is defined as "to harass, harm, pursue, hunt, shoot, wound, kill, trap, capture, or collect" members of the species. 16 U.S.C. 1532(19).  Another important protection is the "consultation" process: if a federal agency determines that an action it is preparing to take may adversely affect a listed species, it must consult with the Fish and Wildlife Service to ensure that its action is not likely to jeopardize the continued existence of the species or destroy or adversely modify its habitat. *See* 16 U.S.C. § 1536(b)(3)(A). The ESA also requires the Service to develop and implement recovery plans for such species unless it finds that such a plan will not promote the conservation of the species. *See* 16 U.S.C. § 1533(f).

and proceed in an efficient and timely manner." H.R. Conf. Rep. No. 97-835, reprinted in 1982 U.S.C.C.A.N. at 2,862. In 1983, the Service published its threat-based listing priority guidelines in the Federal Register. *See* U.S. Fish and Wildlife Service, "Endangered and Threatened Species Listing and Recovery Priority Guidelines," 48 Fed. Reg. 43,098 (Sept. 21, 1983) ("Listing Priority Guidelines"). This system ranks species according to: (1) the magnitude of threats they face; (2) the immediacy of these threats; and (3) the taxonomic distinctiveness of the entity that may be listed. Listing priority numbers range from 1 (highest priority) to 12 (lowest priority). *See id.* at 43,102-03. There are two ways for a species to be listed, the "candidate assessment process," in which the Service, on its own, identifies species that meet the listing criteria and by petition from a member of the public.

### a. *Candidate Assessment Process*

The ESA authorizes the Secretary on his own initiative to list species as endangered or threatened, provided the criteria for listing are met. 16 U.S.C. § 1533(a)(1) and (c)(1). If the Service determines that it has on file "sufficient information on biological vulnerability and threats to support proposals to list [a species] as endangered or threatened," it will either propose a rule to list the species as threatened or endangered, or determine that doing so is "precluded at present by other higher priority listing actions," in which case the species is placed on the "candidate list." See 74 Fed. Reg. 57,804, 57865 (Nov. 9, 2009) ("2009 CNOR"). Inclusion on the candidate list signifies that the Service anticipates proposing to list the species in the future after other higher priority listing actions are completed, and as funding permits. *See* 64 Fed. Reg. 57,114 (Oct. 22, 1999). The Service assigns all candidate species a listing priority number, using its biology-based Listing Priority Guidelines.

### b. *The Petition Process*

The second way a species may be listed is through the "petition process." Once the Service receives a petition for listing from an "interested person," it must determine within 90 days "[t]o the maximum extent practicable" whether the petition presents "substantial scientific or commercial information indicating that the petitioned action may be warranted." 16 U.S.C. § 1533(b)(3)(A). If the 90-day finding concludes that the petition does not present substantial information in dictating that listing may be warranted, the listing process is terminated for that

7

petition. If the Service makes a positive 90-day finding for a species, it must determine within twelve months of the date it received that petition whether the petitioned action is: (1) warranted; (2) not warranted; or (3) warranted but precluded. 16 U.S.C. § 1533(b)(3)(B). This is known as the "12-month" finding. If the Service's 12-month finding is "not warranted," this finding ends the listing process. 16 U.S.C. § 1533(b)(3)(C)(ii). If the Service's 12-month finding is that listing is "warranted," it must promptly publish in the Federal Register "a general notice and the complete text of a proposed regulation to implement" the listing, 16 U.S.C. § 1533(b)(3)(B)(ii), (5)(A)(i), and provide for a public comment period of 60 days. 50 C.F.R. § 424.16(c)(2). The Service must then make a final listing determination within 12 to 18 months, depending on the circumstances. 16 U.S.C. § 1533(b)(6)(A), (B). The two alternatives for a final listing determination are: (1) adoption of a final rule implementing the listing determination; or (2) withdrawal of the proposed rule because the Service determines that the species is not endangered or threatened. 16 U.S.C. § 1533(b)(6)(A)(i), (B)(ii).

### 2. Warranted But Precluded Findings and Resubmitted Petitions

The third alternative for a 12-month finding, which is the finding at issue in this case, is a "warranted but precluded" finding. To find that a petitioned action is "warranted but precluded," the Secretary must conclude that although listing the species is warranted, "the immediate proposal and timely promulgation of a final regulation implementing the petitioned action . . . is precluded by pending proposals to determine whether any species is an endangered species or a threatened species." 16 U.S.C. § 1533(b)(3)(B)(iii)(I). The Service must also find that "expeditious progress is being made to add qualified species" to the threatened or endangered lists, and to remove species that are no longer qualified. 16 U.S.C. § 1533(b)(3)(B)(iii)(II). The Service must publish warranted but precluded findings in the Federal Register, "together with a description and evaluation of the reasons and data on which the finding is based." 16 U.S.C. §1533(b)(3)(B)(iii). A warranted but precluded finding is subject to judicial review. 16 U.S.C. §1533(b)(3)(C)(ii). As in the candidate process, the determination that listing a species is "precluded" by pending proposals to list other species is based on an assessment of the budgetary resources available for listing and the priority ranking that has been assigned to the species. *See, e.g.*, 2009 CNOR at 57,814-19. The Service also prioritizes statutorily mandated deadlines, court-ordered actions, court-enforced

settlement decrees, and essential administrative, litigation-related, and program-management functions. *See* 2009 CNOR at 57,813. A finding of "warranted but precluded" means that the Service will not immediately begin the process of developing a proposed rule to add that species to the list of threatened and endangered species. Such species therefore do not receive the full protections the ESA affords to listed species.

The Service is required to monitor the status of warranted but precluded species and "make prompt use" of its emergency listing authority "to prevent a significant risk to the well being of any such species." 16 U.S.C. § 1533(b)(3)(C)(iii). The publication of a warranted but precluded finding also serves as notice that the Service is actively seeking information regarding the status of the species, and the Service annually prepares an updated assessment of such species' status in order to identify species for which emergency listing may be appropriate. *See* 2009 CNOR at 57,812. The Service provides other federal agencies with the candidate species list of such species during ESA consultations in order to encourage conservation measures to protect such species. *See* 50 C.F.R. § 402.12(d); *see also* 2009 CNOR at 57,804. If a petition to list a species results in a warranted but precluded 12-month finding, the ESA requires that the Service treat that petition as having been resubmitted on the date of that finding. 16 U.S.C. § 1533(b)(3)(C)(i). Within twelve months, the Service is required to reevaluate whether listing is warranted, not warranted, or warranted but still precluded, and issue a new finding to that effect. A new finding on a resubmitted petition supersedes the previous such finding. *See, e.g.*, 2009 CNOR at 57,805.

The Service uses the term "candidate species" and "candidate list" to include all species whose listing has been found to be warranted but precluded by higher priorities, either through the petition process or the candidate process. *See* 2009 CNOR at 57,811. The Service periodically publishes a document in the Federal Register known as the Candidate Notice of Review ("CNOR"). The CNOR updates the conservation status of all candidate species and provides new findings regarding any species previously the subject of warranted but precluded findings through the petition process (as noted above, such petitions are considered to have been automatically "resubmitted" on the date the initial warranted but precluded finding was made, pursuant to 16 U.S.C. §1533(b)(3)(C)(i)). The CNOR explains the rationale for the warranted but precluded status of any such species, including information about the Congressionally-approved ESA listing program

9

budget, the threat-based priority ranking assigned to all the candidate species, the competing priorities that preclude work on the "warranted but precluded" species, and the progress being made by the Service in carrying out other listing activities. *See, e.g.*, 2009 CNOR.

### C.     The Administrative Procedure Act

A court will review allegations that an agency action does not comport with ESA requirements under the scope and standard of review provided by the APA. *See Village of False Pass v. Clark*, 733 F.2d 605, 609 (9th Cir. 1984) ("Because ESA contains no internal standard of review, section 706 of the Administrative Procedure Act, 5 U.S.C. § 706, governs review of the Secretary's actions."). The APA empowers a court to "hold unlawful and set aside" agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). The APA defines agency action to include "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13).

### D.     The Defendants' Motion

The Defendants argue first that the Plaintiffs' challenges to the past years' "warranted but precluded" findings are mooted by the publication of the most recent one in 2009. Because the past years' findings regarding whether the fisher is "warranted but precluded" have no bearing on, and are superceded by, the current findings, Defendants argue, the claims based upon these past findings are moot. Second, the Defendants argue that the past findings do not fall within the exception to mootness of acts that are "capable of repetition yet evading review."

Plaintiffs respond that the claims based upon past findings are not moot for two reasons. First, there is a live controversy between the parties regarding the Service's duties under Section 4 of the ESA that cannot be resolved with reference to the 2009 CNOR alone. Second, Plaintiffs argue that the Court can still provide effective relief with regard to the Service's alleged ESA violations arising from the 2004 Fisher Finding and the subsequent CNORs. Pl.'s Opp. at 7.

In the alternative, Plaintiffs argue that even if the superseded findings are moot, they fall within the exception for acts that are "capable of repetition yet evading review."

### E. Application of the Law to the Facts of This Case

#### 1. At This Stage of the Proceedings the Court Cannot Decide Whether Plaintiff's Claims Regarding the Past Years' Findings are Moot

The Court finds that it is premature at this stage in the litigation to decide whether Plaintiffs' claims regarding past years' warranted but precluded findings are moot. As a threshold matter, the Court notes that "[t]he burden of demonstrating mootness is a heavy one." *Los Angeles County v. Davis*, 440 U.S. 625, 632 (1979). Claims should only be dismissed as moot where "it is clear that plaintiff will be unable to prove any set of facts which would entitle him to recover." *General Motors Corp. v. Manly Oldsmobile-GMC, Inc.,* 2007 WL 776261, *2 (N.D. Cal. Mar 12, 2007) (internal citations and quotations omitted). Further, "[d]espite superseding events, an issue is not moot if there are present effects that are legally significant." *Jacobus v. Alaska*, 338 F.3d 1095, 1104 (9th Cir. 2003). Accordingly, "dismissal of a case on grounds of mootness would be justified only if it were absolutely clear that the litigant no longer had any need of the judicial protection that it sought." *Id.* at 1102-03. At this early stage in the case, the issues are not sufficiently developed for the Defendants to satisfy this burden.

It is far from obvious that a new CNOR automatically moots a challenge to a previous one. *See Friends of the Wild Swan v. U.S. Fish & Wildlife Service*, 945 F.Supp. 1388, 1400-01 (D. Or. 1996) (reviewing allegedly "superseded" warranted but precluded finding). In *Friends of the Wild Swan*, the district court dismissed the plaintiff's challenge to a 1994 "warranted but precluded" finding with respect to the bull trout on the grounds that it was mooted by the 1995 finding. *Id.* at 1393. The Ninth Circuit reversed in an unpublished opinion.[3] On remand, the district court found the 1994 finding to be arbitrary and capricious and remanded to the agency for a reevaluation of the record as it existed in 1994. *Friends of the Wild Swan*, 945 F.Supp. at 1396. The district court reasoned that, if the agency should have listed the species in 1994, then subsequent CNORs would not have been required and would thus be without legal effect. *Id.* at 1401. Furthermore, even if the agency were to affirm its original finding upon reexamination of the 1994 record, the court's opinion would inform the agency's future reevaluations of the species. *Id.* ("FWS's reconsideration of its

---

[3]This opinion is not citable pursuant to Ninth Circuit Rule 36-3.

11

1 1994 FINDING in light of this opinion will, this court hopes, inform any future decisions FWS must
2 make regarding listing of the bull trout. . .).

3 In other cases, courts have assumed without discussion that a later "warranted but precluded"
4 finding does not moot challenges to an earlier one. For example, the Ninth Circuit has held that
5 "warranted but precluded" findings violated the ESA even though more recent findings had been
6 issued. *Center for Biological Diversity v. Kempthorne* ("*Kempthorne I*), 466 F.3d 1098, 1103-04
7 (9th Cir. 2006). Although mootness was not directly addressed in this case, the court could have
8 raised the issue *sua sponte* if it thought the more recent findings mooted the claims.

9 Similarly, in a D.C. district court case, the Fish and Wildlife Service conceded that a more
10 recent CNOR did not moot the challenge to the policies underlying an earlier one. *California Native*
11 *Plant Society v. Norton*, No. 03-1540 (JR), 2005 WL 768444, *5 (D.D.C. Mar. 24, 2005). The
12 plaintiff challenged the sufficiency of the "warranted but precluded" finding, and the court
13 ultimately held that the 2002 and 2004 CNORs failed to comply with the ESA's requirements,
14 including that their findings be explained. *Id.* at *8.

15 Moreover, a controversy is not moot if there are disputes concerning continuing practices or
16 policies, the resolution of which will have actual consequences for the parties. For example, in
17 *Forest Guardians v. Johanns*, the Ninth Circuit ruled that although Plaintiff's request for injunctive
18 relief was mooted during the course of litigation because the agency complied with his request for
19 action, Plaintiff's prayer for declaratory relief was not moot. Pl.'s Opp. at 11 (citing *Forest*
20 *Guardians v. Johanns*, 450 F.3d 455, 462-63 (9th Cir. 2006). The court reasoned that, because the
21 agency action was a "continuing practice" subject to annual reconsideration and the general agency
22 practice was likely to continue (the agency still maintained it was not subject to the monitoring
23 requirements), the court's opinion still provided effective relief. 450 F.3d 455 (9th Cir. 2006). The
24 court discussed in detail another relevant Ninth Circuit case, *Northwest Environmental Defense*
25 *Center v. Gordon*, 849 F.2d 1241, 1245 (9th Cir. 1988). There, the plaintiff requested an injunction
26 to force agency compliance and "a declaratory judgment that the agency violated various
27 environmental laws." 450 F.3d at 462. After the 1986 salmon season ended, the district court
28 dismissed the action as moot. The Ninth Circuit reversed, ruling that, "although the request for an
injunction was rendered moot, a declaratory judgment could help to remedy the effects of the

agency's statutory violations and to ensure that similar violations would not occur in the future: 'In deciding such a case the court is not merely propounding on hypothetical questions of law, but is resolving a dispute which has present and future consequences.'" *Id.*

Defendants argue that the *Forest Guardians* case is inapposite because the Service's precluded findings do not have continuing legal effect and "do not similarly implicate any long-term policy issues. And even if they did, then this Court can review the currently operative 2009 finding to determine whether the agency's policies and procedures in preparing warranted but precluded findings are deficient, and issue any necessary declaratory relief along with its remand." Reply at 4-5.

The Court is not persuaded that this matter can be decided on a motion to dismiss. The challenges raised in the Complaint do not delineate the "policies" that the Plaintiffs seek to reverse. These issues must be developed further before the Court can make an assessment regarding which ongoing policy issues and which CNORs present a dispute "which has present and future consequences."[4]

## IV. CONCLUSION

For the foregoing reasons, the Court DENIES the Defendants' motion to dismiss without prejudice to renewing it as part of summary judgment after the factual record has been developed.

IT IS SO ORDERED.

Dated: October 15, 2010

_____
JOSEPH C. SPERO
United States Magistrate Judge

---

[4] Even if not moot, at least one or more of the CNORs may fall under the exception for acts that are "capable of repetition yet evading review." A new finding must be issued every 12 months by statute – a period that is too short to allow for judicial review. *See Greenpeace Action v. Franklin*, 14 F.3d 1324 (9th Cir. 1992) (one year "too short to obtain effective judicial review" of environmental decision). However, that exception may not require review of all of the CNORs at issue in this case. Because the Court concludes that it is premature to decide the mootness issue before the parties have identified the specific issues to be litigated regarding the CNORs, the Court declines to reach the question of an exception to the mootness doctrine.